IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

HAROLD FISHER,

        Plaintiff,

vs.                              **Case No. 09-4116-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

## **MEMORANDUM AND ORDER**

Plaintiff has filed an application for social security disability insurance benefits which has been denied by defendant once prior to the filing of this case, and then a second time after this matter was remanded for additional consideration by an administrative law judge (ALJ). Plaintiff currently alleges a disability onset date of January 2, 2003. On May 3, 2010, an administrative hearing was conducted upon plaintiff's application, following the remand from this court. The ALJ considered the evidence and decided on July 26, 2010 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's application for disability insurance benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004).  "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to

2

the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 23-34).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 24-25). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process.  The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant

numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through March 31, 2006. Second, plaintiff did not engage in substantial gainful activity after the alleged onset date of disability, January 2, 2003, through the last date of insured status. Third, plaintiff has the following severe impairments: degenerative disk disease of the lumbar spine; degenerative joint disease of bilateral shoulders; obesity; post right foot injury; irritable bowel syndrome; chronic obstructive pulmonary disease; depression; anxiety; post traumatic stress disorder; and personality disorder. (Tr. 25). Fourth, through the date when he was last insured, plaintiff did not have an impairment or combination of impairments that meet or medically equal the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). Fifth, plaintiff has the residual functional capacity to perform:

> light work as defined in 20 CFR 404.1567(b) or work which requires maximum lifting/carrying of 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for a total of 4 hours, and sit for a total of 4 hours in an 8-hour workday with unlimited ability to push/pull. [Plaintiff] can occasionally climb, balance, stoop, kneel, crawl or crouch. He should avoid concentrated noise and can only frequently do bilateral handling and fingering. [Plaintiff] is limited to simple unskilled work with an SVP of 2 or less due to loss of concentration, persistence and pace and short-term memory loss as a result of his depression and anxiety.

(Tr. 29). Sixth, plaintiff was unable to perform any past relevant

work. (Tr. 32). But, seventh, plaintiff was capable of performing jobs that existed in significant numbers in the national economy, such as: cashier; routing clerk; and sub-assembler. (Tr. 33). This last finding was based upon the testimony of a vocational expert, and the ALJ considered plaintiff's age, education, work experience and residual functional capacity.

III. ARGUMENTS AND ANALYSIS

    A. <u>Consideration of evidence on remand</u>

Plaintiff's initial argument is that the ALJ did not comply with the court's remand order in two respects. First, plaintiff contends that the ALJ did not consider a report from Dr. Brad Anderson regarding plaintiff's cognitive functioning. Second, plaintiff argues that the ALJ did not adequately consider plaintiff's VA disability rating.

There is no dispute that the ALJ was to consider the report of Dr. Anderson after this case was remanded for further hearing. Defendant contends that the ALJ followed that directive.

Dr. Anderson produced a neuropsychological assessment report dated July 14, 2005. (Tr. 1001-1003). The report included a clinical interview, a review of medical records, and the administration of several tests of mental functioning. Plaintiff's intellectual functioning tested as normal or above normal. His attention/concentration scores were above average. His memory of verbally presented materials was superior, while his recall of

visually presented information was mildly impaired.  There was no evidence of language dysfunction or visual-spatial dysfunction. Indeed, some of the scores were high average.  Plaintiff's frontal/executive functions tested average, low average and, in the case of psychomotor processing, mildly impaired.  Plaintiff appeared pleasant and cooperative during the testing process and there was no evidence of thought disorder.  Dr. Anderson's summary and recommendations were as follows:

> SUMMARY:  Results of the neuropsychological evaluation indicate variable test performance, with scores ranging from severely impaired to superior for the patient's age. Relative deficits are observed in areas of visual short-term memory, psychomotor processing speed, and verbal fluency.  Remaining areas of cognitive functioning are often above average, and occasionally superior.
>
> This pattern of relative deficits is occasionally described in patients with chronic alcoholism.  However, the dramatic difference between the patient's verbal and visual memory is somewhat surprising given his length of reported sobriety and the possibility of an additional cerebral vascular etiology should be considered.
>
> RECOMMENDATIONS:
>
> 1.  Suggest brain imaging due to evidence of possible focal organic deficits.
>
> 2.   Recommend repeat neuropsychological testing if significant declines in daily functioning or cognition are observed.
>
> 3.  Suggest conservative approach to driving due to impaired visual memory and declines in psychomotor processing speed.

(Tr. 1003).

A brain image was conducted on August 12, 2005.  The findings

were generally normal with an impression of mild cerebral atrophy. (Tr. 916).

The ALJ's decision noted Dr. Anderson's report and the results of the brain scan. (Tr. 27). The decision refers a second time to Dr. Anderson's report as indicating that plaintiff "says his mental condition in 2006 and beyond is better tha[n] March 2004." (Tr. 28).

The second reference to Dr. Anderson's report may be a mistake by the ALJ because Dr. Anderson's report was completed in July 2005 and does not address statements made by plaintiff in 2006. Despite this apparent mistake, the court finds that the ALJ followed the directions issued on remand. The unopposed motion for remand, granted by the court, stated that upon receipt of the court's remand order, the Appeals Council would remand the case so the ALJ would "consider" Dr. Anderson's July 14, 2005 report and other items. Doc. No. 10 at p. 1. The Appeals Council's order instructed the ALJ to "[r]eevaluate the severity of the claimant's medically determinable mental impairments and resulting limitations in light of the July 2005 neuropsychological assessment report by Dr. Anderson." (Tr. 75). As the court reads the ALJ's post-remand decision, the ALJ did consider Dr. Anderson's report as part of the ALJ's reevaluation of plaintiff's impairments. An ALJ is not required to discuss all the evidence in the administrative record. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). The failure

of the ALJ to give a more expansive explanation of the weight and credit he gave to Dr. Anderson's report does not appear critical to a determination of whether the ALJ's decision should be reversed. Plaintiff notes that Dr. Anderson mentioned "mild" impairments in some memory functions and that he recommended that plaintiff take a "conservative approach" to driving.  The court, however, finds that neither of these references provides sufficient support for the claim that the ALJ ignored material evidence supporting limits upon plaintiff's functional capacity.

    The court reaches the same conclusion with regard to the consideration of plaintiff's VA rating.  The Appeals Council directed the ALJ to:

> Consider the February 2004 VA rating decision in accordance with the provisions of Social Security Ruling 06-3p, section II, in connection with a further evaluation of claimant's digestive impairments at step 2 of the sequential evaluation process.

(Tr. 75).  The ALJ's decision notes that plaintiff "indicated he has been rated by the Veterans Administration with a 20% body disability due to Crohn's disease, a 10% body disability due to right foot problems and a 10% body disability due to low back spasm, totaling a 40% disability." (Tr. 26).  Plaintiff contends that the ALJ must not have adequately analyzed or evaluated the VA rating because he concluded that plaintiff's Crohn's disease was a non-severe impairment in spite of the 20% rating by the VA.

    The ALJ noted that plaintiff's Crohn's disease was reported by

8

plaintiff to be "well controlled by medication and in remission since April 2005." (Tr. 30). The ALJ specifically referred to plaintiff's Crohn's disease being in remission when he discussed the VA disability rating at page 9 of his decision. (Tr. 31). On the same page, the ALJ also discussed plaintiff's activities as listed in plaintiff's function report and concluded:

> The evidence shows the claimant's daily activities demonstrate successful independent living which is inconsistent with the claims of disabling impairments. This level of activity demonstrates a level of vigor and an ability to concentrate and interact with others which is inconsistent with the claimant's claim that he is unable to perform any work activity.

(Tr. 31). The ALJ also gave significant weight to the physical residual functional capacity assessment of Jodie L. Spangler, a medical consultant. (Tr. 31). This assessment was written September 30, 2004. The assessment reported that plaintiff's Crohn's disease was under medical management and stated that plaintiff stated that he cared for his personal needs, did light yard work, cooked his own meals, did laundry and other minor household chores, drove, shopped for groceries and left home without assistance. (Tr. 841). The consultant concluded that plaintiff's allegations of physical problems with standing, walking, kneeling, lifting, bending and stair climbing were only partially credible. (Tr. 841). The assessment indicated that plaintiff could frequently lift or carry 25 pounds and that plaintiff could stand or sit six hours out of an eight-hour

9

workday. (Tr. 835).

It should be noted further, as reflected in the ALJ's decision, that plaintiff stated he was diagnosed with Crohn's disease in 1997, several years before his alleged disability onset date. (Tr. 26, 816). In 2004, plaintiff reported that his Crohn's disease was "getting worse" and flaring up "every six months." (Tr. 816). In February 2004, the VA gave the rating discussed in this opinion. By September 2004, plaintiff's Crohn's disease was under medical management, according to the assessment of Jodie Spangler. By April 2005, plaintiff's Crohn's disease was in remission according to plaintiff.

After careful review, the court believes that the ALJ did give reasonable consideration to plaintiff's VA rating when evaluating plaintiff's level of impairment after this case was remanded for further hearing.

B. Evaluation of mental impairments

Plaintiff faults the ALJ's evaluation of plaintiff's mental impairments as not being supported by substantial evidence. One of plaintiff's arguments is that the ALJ made unsubstantiated findings and conclusions when he decided that plaintiff did not have a mental impairment which medically equaled the criteria of listings 12.04, 12.06, and 12.08.

The ALJ's decision notes that plaintiff said he has been diagnosed with posttraumatic stress disorder; that plaintiff

10

attends VA therapy sessions twice a week to work on social relationships; and that he has been diagnosed with and is taking medication for depression and anxiety. (Tr. 26). The ALJ summarized the mental consultative examination of Dr. Robert Barnett, dated August 23, 2004, who concluded that: plaintiff was alert and oriented with a below average fund of information; plaintiff's insight and judgment were fair to good; plaintiff's memory was intact; and plaintiff had no difficulty with attention and concentration. (Tr. 27).

The ALJ referred to a Function Report, dated October 27, 2004 in which plaintiff indicated that he:

> daily works on the computer, takes care of the household pet, and helps his 82-year-old mother he lives with doing shopping, driving her to appointments and arranging contractors to help around the house. He also cooks meals, plans and cares for a vegetable garden, goes outside 15 to 20 times a day to smoke cigarettes, shops in stores and by computer for goods and equipment for the house, handles financial matters, attends counseling sessions, and goes fishing for catfish.

(Tr. 28). According to the ALJ, plaintiff's mother described plaintiff's activities and abilities in another function report as follows:

> claimant did laundry, drove a car, performed crochet, and engaged in computer games and surfing the net. She further observed that the claimant was able to follow written and spoken instructions "usually ok," was usually agreeable, and could handle changes in routine "fairly well" and handle stress "fair."

(Tr. 28).

It seems clear to the court that upon the basis of this

information as well as the report of Dr. Anderson previously discussed in this opinion, the ALJ concluded that plaintiff has: mild restrictions in the activities of daily living; moderate restrictions in social functioning, moderate restrictions with regard to concentration, persistence or pace; and no episodes of decompensation. (Tr. 28). These findings are contained in relatively close proximity to the ALJ's discussion of and citations to Dr. Barnett's findings, Dr. Anderson's examination and the function reports. Therefore, we reject plaintiff's claims that the ALJ's mental impairment findings are insufficiently explained or supported.

In the same vein, the court rejects plaintiff's claim that the ALJ failed to properly address the opinion of Dr. Schuler, plaintiff's treating psychiatrist.

On March 7, 2007, Dr. Schuler completed a form titled "Affective Disorders & Anxiety Disorders Questionnaire (Listings 12.04, 12.06." Dr. Schuler indicated on the form that she had been treating plaintiff since February 11, 2002, that plaintiff suffered from depression and anxiety disorders to a disabling degree, and that these were chronic and persistent problems which had been present for decades. (Tr. 995-998). She commented on the form that plaintiff had difficulty in social and occupational settings and that he constantly worried about things over which he had no control. (Tr. 997-98).

12

The ALJ stated that he gave the form "little weight." (Tr. 28). He noted that:

> [Dr. Schuler] did not specify any symptoms or list any degree of severity of any symptom, to justify a finding that the claimant has any symptoms which meet a Listing. Additionally, the opinions contained within [the form] are contradictory to the claimant's own observations as to what he can do.

(Tr. 28). The ALJ further stated that Dr. Schuler's assessment differed from the results of Dr. Anderson's examination, although this is the place in the ALJ's decision where the ALJ appears to mistakenly reference a statement that plaintiff's mental condition had improved in 2006 over March 2004. (Tr. 28). The ALJ remarked in conclusion that he did not ignore Dr. Schuler's opinions. He also stated that:

> [W]hether an individual is "disabled" under the Social Security Act is not a medical issue regarding the nature and severity of an individual's impairments but is an administrative finding that is dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved to the Commissioner of the Social Security Administration. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.

(Tr. 28-29). It might be implied from this the ALJ dismissed Dr. Schuler's opinion because it related to issues reserved to the Commissioner for decision. However, the ALJ did not directly say as much and he specifically commented that he did not ignore the opinion, although he gave it "little weight."

Plaintiff does not appear to disagree that Dr. Schuler's comments lacked specificity or detailed support. But, plaintiff

13

attacks the ALJ's comment that Dr. Schuler's opinions were contradictory with plaintiff's "own observations." Plaintiff notes that he testified in his first administrative hearing that he had problems with concentration and that stress from walking into an office sometimes made him feel like his "whole world is just compressed in on me." (Tr. 295). Plaintiff, however, also testified that therapy was helping with his depression (Tr. 287) and that he had no problems with small groups and was alright at Wal-Mart on a non-busy day. (Tr. 296). During the second administrative hearing, plaintiff stated that he could clam up, explode or - most likely - retreat in reaction to stress (Tr. 1624), but that he did the majority of shopping for himself and his mother (Tr. 1599) and that he engages in social activity at a farmer's market and at the VA. (Tr. 1625-26). The ALJ referred to plaintiff's function report in which plaintiff recorded that he drove his mother to appointments, arranged contractors to help around the house and handled financial matters. (Tr. 28). In our review of the record, the court does not believe it was unfair or unreasonable for the ALJ to state that Dr. Schuler's opinions were contradictory to plaintiff's own observations.

Plaintiff also argues that it was incorrect for the ALJ to claim that Dr. Schuler's opinions differ from Dr. Anderson's assessment. The court rejects this argument. The court believes that on the whole Dr. Anderson's assessment does not accord with

14

someone suffering from significantly depressed mood or marked anxiety. Dr. Anderson had plaintiff perform a number of tests and observed that plaintiff was well-oriented, pleasant, cooperative, alert, coherent, and exhibited good effort. (Tr. 1001-02).

Finally, plaintiff contends that it was improper for the ALJ to suggest that Dr. Schuler was rendering an opinion on issues reserved for the Commissioner for decision. Plaintiff cites Krauser v. Astrue, 638 F.3d 1324 (10th Cir. 2011) to support his argument.

The court believes Krauser is distinguishable from the record in this case. In Krauser, a treating physician made specific findings regarding a claimant's ability to sit, stand, need to change positions, need to be absent from work, and need for pain medication which would interfere with the ability to concentrate or reason effectively. In spite of these specific findings, the ALJ in Krauser dismissed the treating physician's findings as constituting a general opinion that the claimant was not able to perform sedentary work which was an issue reserved to the Commissioner for decision. The Tenth Circuit said this was an error by the ALJ because the treating physician's specific medical findings were precisely what the process required. Those findings impacted "the ALJ's determination of RFC – they always do, because that is what they are for – but that does not make the medical findings an impermissible opinion on RFC itself." 638 F.3d at

15

1332.

Here, Dr. Schuler's findings were not very specific and the ALJ made this criticism with justification. (Tr. 28). The findings did not state in any detail how plaintiff's mental impairments affected his capacity to perform work.

Moreover, the ALJ did not expressly reject Dr. Schuler's opinion as an infringement upon the ALJ's role in the process. The ALJ only reiterated the standard phrases which place the final responsibility for determining whether a claimant is disabled with the Commissioner of Social Security. The ALJ did not ignore Dr. Schuler's findings; rather his written decision addressed many of the relevant factors for evaluating the opinion of a treating physician. See Krauser, 638 F.3d at 1331. After carefully considering plaintiff's criticisms, the court finds that the ALJ committed no substantial error in considering the opinion of plaintiff's treating physician.

    C.   Need to alternate sitting and standing

A vocational expert testified that there were at least three types of jobs in the national economy which plaintiff could perform: cashier, routing clerk, and sub-assembler. The ALJ relied upon this testimony in making his decision. Plaintiff contends that this testimony is not reliable because the expert did not adequately consider plaintiff's need to alternate sitting and standing.

The ALJ concluded that plaintiff could stand for four hours and sit for four hours in an eight-hour work day. (Tr. 29). He asked the vocational expert to consider this limitation (among others) and to consider that plaintiff would need a "sit/stand option" - "one that would be at will and would not otherwise materially adversely affect [the] ability to do the work." (Tr. 1628).

Plaintiff argues that the denial of benefits should be reversed because the hypothetical question posed to the vocational expert was not sufficiently specific regarding the frequency with which plaintiff might need to alternate sitting and standing. Plaintiff cites Maynard v. Astrue, 276 Fed.Appx. 726 (10th Cir. 2007) to support his position.

In Maynard, a claimant with a back problem was limited to performing sedentary employment. The limitations arguably extended to some sedentary jobs because the claimant's treating physician stated that the claimant could not sit for prolonged periods of time. Nevertheless, the ALJ applied the grid regulations (in spite of the evidence that the claimant could not do the full range of sedentary employment) to hold that the claimant did not qualify for benefits. The Tenth Circuit reversed this decision, first, because the ALJ did not adequately explain why the treating physician's opinion regarding prolonged sitting was not accepted. This was important, of course, because the ALJ could only rely upon the

17

grids if the claimant could perform a full range of sedentary employment.

The Tenth Circuit also referred to SSR 96-9p which provides that when a claimant cannot perform the full range of sedentary work, the grids "must be used as a framework for considering the extent of the erosion of the sedentary occupational base." Maynard at * 3.  One suggestion in SSR 96-9p is that the RFC assessment be specific "as to the frequency of the individual's need to alternate sitting and standing" because that may impact the extent that the occupational base is eroded.  Id. at *4.  The Tenth Circuit in Maynard found that the ALJ's hypothetical failed to specify the frequency of the need to alternate sitting and standing when the ALJ asked:  "What would be a good job where you could sit or stand with [Mr. Maynard's] skill levels?"  Id.

We find that plaintiff's argument and reference to the Maynard decision do not require the reversal of the decision to deny benefits.  In this case, the ALJ was more specific in setting forth the frequency of the need to alternate sitting and standing when he asked the vocational expert whether there were jobs in which plaintiff could sit or stand "at will."  Furthermore, the ALJ did not rely upon the grid regulations in this case, unlike the Maynard case.  Finally, SSR 96-9p relates to sedentary work; it does not have direct application here where plaintiff has been found capable of performing some types of light work.  In sum, the court finds

18

that the ALJ's decision conformed with the law and the evidence regarding plaintiff's RFC and the occupations which plaintiff could perform.

IV.  CONCLUSION

In conclusion, the court shall affirm the judgment of the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 7th day of February, 2012 at Topeka, Kansas.

                              s/Richard D. Rogers
                              United States District Judge